UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| NATHAN SILVA, Derivatively on Behalf of Nominal Defendant HUMANA INC. | Plaintiff |
| v. | Civil Action No. 3:24-cv-00418-RGJ |
| BRUCE D. BROUSSARD, ET AL. | Defendant |

\*\*\*

| | |
|---|---|
| SHANTAVIA SPIKES, Derivatively on Behalf of HUMANA INC. | Plaintiff |
| v. | Civil Action No. 3:24-cv-00590-RGJ |
| BRUCE D. BROUSSARD, ET AL. | Defendants |

\*\*\*

| | |
|---|---|
| ALBERT NOBLE, Derivatively on Behalf of Nominal Defendant HUMANA INC. | Plaintiff |
| v. | Civil Action No. 3:24-cv-00630-RGJ |
| BRUCE D. BROUSSARD, ET AL. | Defendants |

\*\*\*

| | |
|---|---|
| SHAWN COMBS, Derivatively on Behalf of Nominal Defendant HUMANA INC. | Plaintiff |
| v. | Civil Action No. 3:25-cv-00171-RGJ |
| BRUCE D. BROUSSARD, ET AL. | Defendants |

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This matter is before the Court upon an unopposed motion to consolidate four shareholder derivative actions and two opposing motions to appoint lead counsel in the consolidated case.

[*Silva v. Broussard*, No. 3:24-cv-00418 ("Action 418"), DE 28; Action 418, DE 32]. Plaintiffs Albert Noble and Shawn Combs filed a joint motion to consolidate and appoint their counsel, Glancy Prongay & Murray LLP ("GPM") and The Rosen Law Firm ("Rosen Law") as co-lead counsel, and Conliffe, Sandmann & Sullivan PLLC ("CSS") as Liaison Counsel ("Noble/Combs motion"). [Action 418, DE 28]. Plaintiff Nathan Silva ("Silva") filed a cross-motion to appoint his counsel, Rigrodsky Law, P.A. ("Rigrodsky Law") as Lead Counsel ("Silva motion"). [Action 418, DE 32]. For the reasons that follow, the Court **GRANTS** the Noble/Combs motion to consolidate, [Action 418, DE 28], **GRANTS** the Noble/Combs motion to appoint Rosen Law and GPM as co-lead counsel with CSS as liaison counsel, [Action 418, DE 28], and **DENIES** the Silva motion to appoint Rigrodsky Law as lead counsel. [Action 418, DE 32].

## I. BACKGROUND

Plaintiff Silva—a shareholder of Nominal Defendant Humana Inc. ("Humana")—filed a shareholder derivative lawsuit against the individual Defendants—various current and former officers and directors of Humana—alleging violations of provisions of the Securities and Exchange Act, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, and waste of corporate assets. [Action 418, DE 1 at 30–36]. After the Silva case was filed, three other substantially similar shareholder derivative lawsuits were filed in this Court: *Spikes v. Broussard, et al.*, No. 3:24-cv-00590 ("Action 590"); *Noble v. Broussard, et al.*, No. 3:24-cv-00630 ("Action 630"); and *Combs v. Broussard, et al.*, No. 3:25-cv-00171 ("Action 171"). Each of the complaints brings derivative causes of action on behalf of Humana alleging that the Defendants repeatedly assured investors that COVID-19 restrictions had not led to pent-up demand for healthcare that would increase utilization rates and reduce the company's profits, when in reality Humana was seeing elevated utilization rates, resulting in higher costs and reduced earnings

per share. [Action 418, DE 1; Action 590, DE 1; Action 630, DE 1; Action 171, DE 1]. Plaintiffs asserts a variety of overlapping claims arising out of these alleged misrepresentations.

Because the derivative actions assert allegations similar to those raised in a shareholder securities class action pending in the District of Delaware, each Plaintiff agreed that "[i]n the interest of judicial economy, . . . Defendants' deadline to move to dismiss, answer, or otherwise respond to the Complaint should be extended until there is a ruling on the defendants' motion to dismiss in the Related Securities Class Action." [Action 418, DE 27; Action 590, DE 20; Action 630, DE 33; Action 171, DE 10]. There has not yet been a ruling in that case. *In re Humana Inc. Securities Litigation*, No. 1:24-cv-655-JLH (D. Del.).

Counsel for Plaintiffs attempted to negotiate a plan to consolidate the cases. When the parties' efforts to consolidate proved unsuccessful, Plaintiffs Noble and Combs moved to (1) consolidate the four actions, (2) appoint their attorneys—GPM and Rosen Law—as co-lead counsel, and (3) appoint CSS as liaison counsel. [Action 418, DE 28]. A few weeks later, Plaintiff Silva filed a Motion to Amend the Complaint and sought leave to file a proposed amended complaint. [Action 418, DE 30]. Plaintiff Silva then cross-moved to appoint his own counsel, Rigrodsky Law, as lead counsel and agreed that consolidation was appropriate. [Action 418, DE 32-1]. Plaintiff Spikes did not join Silva's cross-motion and has not responded to either motion to consolidate and appoint lead counsel.

## II. DISCUSSION

### A. Consolidation

Noble and Combs argue that the four derivative actions should be consolidated because they each "involve[] common questions of fact and law, allege[] similar underlying factual and legal claims, and are at the earliest state of litigation." [Action 418, DE 28-1 at 175]. Silva agrees

3

that the actions involve common questions of law and fact and therefore "consents to granting that part of [the Noble/Combs motion] seeking consolidation . . . ." [Action 418, DE 32 at 713]. Spikes has not weighed in on whether the actions should be consolidated.

Federal Rule of Civil Procedure 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a). "Cases should be consolidated if the risks of prejudice and confusion are outweighed by other factors including 'the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources. . . .'" *Carpenter v. GAF Corp.*, Nos. 90–3460, 90–3461, 1994 WL 47781, at *1 (6th Cir. Feb. 15, 1994) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

Each derivative action filed on behalf of Humana alleges that the Defendants—directors and officers of Humana—misrepresented patient utilization rates in the wake of COVID-19 and failed to disclose adverse facts about the company's prospects. [Action 418, DE 1 at 1–5; Action 590, DE 1 at 1–6; Action 630, DE 1 at 1–3; Action 171, DE 1 at 1–5]. They each claim that, as a result of these misrepresentations to the investing public, the Defendants breached their fiduciary duties, causing harm to Humana's reputation and leading to the commencement of a securities fraud class action against the company. [Action 418, DE 1 at 5; Action 590, DE 1 at 6; Action 630, DE 1 at 19; Action 171, DE 1 at 62-63]. Each action arises from the same set of facts, involves the same legal issues, and targets largely the same Defendants. Three of the plaintiffs have agreed that consolidation is appropriate, and the fourth has not challenged the motion for consolidation. Because the derivative actions share common factual and legal issues and all of the parties have either consented to or failed to oppose consolidation, the Court finds that consolidation is appropriate here. Accordingly, the Court will consolidate these actions.

### B. Appointment of Lead Counsel and Liaison Counsel

"It is well established that the Court may appoint a leadership structure of plaintiffs' counsel to coordinate the prosecution of complex litigation." *In re Wendy's Co.*, No. 1:16-CV-1153, 2018 WL 6605394, at *2 (S.D. Ohio Dec. 17, 2018), *aff'd*, *In re Wendy's Co. S'holder Derivative Action*, 44 F.4th 527 (6th Cir. 2022) (citing *In re Bendectin Litigation*, 857 F.2d 290, 297 (6th Cir. 1988)). "In exercising its inherent authority to appoint lead counsel, the district court should select the counsel who will best honor the interests of the plaintiffs litigating on behalf of the corporation." *In re Wendy's Co. S'holder Derivative Action*, 44 F.4th at 533. While there is no exact test the district court must use to make this determination, the court should consider "counsel's qualifications and experience, counsel's ability to work cooperatively with opposing counsel and the court, the nature of the causes of action alleged, the quality of the pleadings, and any prior agreements amongst the parties." *Id.* Courts also consider "the willingness and ability of all contestants to litigate vigorously on behalf of an entire class of shareholders; the absence of any conflict between larger, often institutional, stockholders and smaller stockholders; [and] the enthusiasm or vigor with which the various contestants have prosecuted the lawsuit." *Kubiak v. Barbas*, No. 3:11-CV-141, 2011 WL 2443715, at *1 (S.D. Ohio June 14, 2011), In this case, the parties primarily dispute (1) the firms' respective qualifications and experience, (2) counsels' ability to cooperate, and (3) the quality of the pleadings and the vigorousness of the prosecution. As a result, the Court will focus primarily on these issues.

1. Counsel's Qualifications and Experience

"In appointing a leadership structure of plaintiffs' counsel, [c]ourts consider the credentials and resumes of the attorneys, their access to resources, and their drive to litigate the case on behalf of the plaintiffs." *Bloom v. Anderson*, No. 2:20-CV-04534, 2020 WL 6710429, at *8 (S.D. Ohio

Nov. 16, 2020) (citing *In re Wendy's Co.*, 2018 WL 6605394, at *2)). In shareholder derivative suits such as these, a firm's experience litigating derivative actions is considered particularly "relevant and helpful." *Id.* (quoting *In re Wendy's Co.*, 2018 WL 6605394, at *2).

At the outset, the Court notes that Rosen Law, GPM, and Rigrodsky Law are all highly qualified firms that have experience in complex shareholder derivative litigation. The Court has no doubt that both the Rosen Law/GPM counsel and the Rigrodsky Law counsel have the knowledge and expertise to adequately litigate the case. As a result, this factor comes down to the resources both sides have at their disposal. While Rosen Law and GPM collectively comprise more than sixty attorneys, Rigrodsky Law has eight attorneys. [Action 418, DE 28-1 at 181, DE 32-1 at 725]. Moreover, Rosen Law and GPM have demonstrated their ability to work together effectively by serving as co-lead counsel in other litigation. [Action 418, DE 28-1 at 180]. This prior collaboration between the firms increases the likelihood that the two firms will work together effectively in this litigation. Finally, Rosen Law and GPM intend to work with local counsel CSS in this litigation, while Silva's motion does not seek the appointment of liaison counsel. [Action 418, DE 32-2]. This fact lends further support to Rosen Law and GPM's argument that they are equipped to give this litigation the attention it requires.

In support of their argument that Silva and Rigrodsky Law are ill-positioned to lead this litigation, Noble and Combs also point to Silva's and Rigrodsky Law's "frequent flyer status" in shareholder derivative actions. [Action 418, DE 38 at 790]. In conjunction with this argument, they ask the Court to take judicial notice of two separate lawsuits filed by Silva with Rigrodsky Law. [Action 418, DE 43, DE 44]. The Court may take judicial notice of public documents and government documents because their sources "cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) ("[I]t is well-settled that

[f]ederal courts may take judicial notice of proceedings in other courts of record (quoting *Granader v. Public Bank*, 417 F.2d 75, 82–83 (6th Cir. 1969))). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Here, Noble and Combs have supplied the Court with two derivative complaints filed by Silva in the Central District of California and the Southern District of Indiana. [Action 418, DE 43-1, DE 44-1]. Because these constitute proceedings in other courts of record and Noble and Combs have supplied the necessary information, the Court will take judicial notice of these complaints.

The complaints establish that, within the past two months, Silva and Rigrodsky Law have brought similar derivative actions against other companies' directors and officers. [*Id.*]. Courts have cautioned that "professional plaintiffs" may not "adequately represent the interests of shareholders . . . in enforcing the right of the corporation" as is required of plaintiffs in derivative actions. *In re JPMorgan Chase & Co. S'holder Derivative Litig.*, No. 08 CIV. 974, 2008 WL 4298588, at *10 (S.D.N.Y. Sept. 19, 2008); Fed. R. Civ. P. 23.1(a); *see also Reed v. Contintental Guest Servs. Corp.*, No. 10 CIV. 5642, 2011 WL 1311886, at *2 (S.D.N.Y. Apr. 4, 2011). The concern is that "the attorneys . . . will completely control the litigation and make these decisions based on their own financial interests rather than the interest of the corporation and its shareholders." *In re JPMorgan Chase & Co. S'holder Derivative Litig.*, 2008 WL 4298588 at *10. These concerns are present here, where Silva has filed two other substantially similar derivative actions with Rigrodsky Law in the span of only two months.

While Rigrodsky Law is certainly qualified and experienced, the combined expertise and size of GPM and Rosen Law ensures that counsel will not be spread too thin and that the Plaintiffs

7

will receive adequate representation in a highly complex case. Consequently, this factor favors appointing Rosen Law and GPM as co-lead counsel with CSS as liaison counsel.

    2.   Counsel's Ability to Cooperate and Prior Agreements Among the Parties

Silva points to Rigrodsky Law's attempts to "secure agreement to work cooperatively and coordinate the Silva, Spikes, and Noble actions" as evidence that it has demonstrated a commitment to working cooperatively with other counsel. [Action 418, DE 32-1 at 721]. In an affidavit supporting Silva's motion to appoint lead counsel, Rigrodsky Law states that "[c]ounsel for Plaintiff Spikes agreed to coordinating and consolidating these actions, but counsel for Plaintiff Noble did not agree." [Action 418, DE 32-2, MacFall Aff., at 732]. Rigrodsky Law notes that after Combs filed suit, Noble and Combs proposed consolidating the cases and appointing Rosen Law and GPM as co-lead counsel. [*Id.*]. Noble and Combs state that they "on multiple occasions . . . reached out to Silva's counsel, who confirmed was working with Spikes' counsel, regarding working on these actions together," but "did not believe it would be beneficial to have four firms effectively be lead counsel here." [Action 418, DE 28-1 at 182]. Noble and Combs further note that Rosen Law and GPM have faced opposing counsel, Alston & Bird LLP ("A&B) in numerous other investor litigations and have maintained a collegial relationship with that firm; Silva counters that Rigrodsky Law, too, has worked cooperatively with A&B. [*Id.* at 181; Action 418, DE 32-1 at 722 n. 14].

While Silva argues that Rigrodsky Law's efforts to coordinate with the other Plaintiffs should weigh strongly in favor of appointing Rigrodsky Law as lead counsel, the reality is that both sets of counsel attempted to resolve this issue with one another but took different approaches. While Rigrodsky Law hoped to have all four firms coordinate the actions with an equal division of work, Rosen Law and GPM proposed that they be appointed as co-lead counsel and "provide[]

both Brown Law and Rigrodsky work and consultation on [the] case." [Action 418, DE 32-3 at 737]. Rosen Law and GPM's belief that it would not be "beneficial to have four firms effectively be lead counsel" does not necessarily reflect an inability to cooperate with other Plaintiffs' counsel, but rather a belief about the practical realities of this case and litigation generally.

The record reflects that both sides have demonstrated an ability to cooperate. Rigrodsky Law attempted to negotiate with the other three firms to consent to an equal division of work, while Noble Law and GPM suggested that they serve as co-lead counsel while still involving Rigrodsky Law and Brown Law. Both have likewise faced—and maintained a respectful relationship with—opposing counsel. In short, neither side is clearly more or less cooperative than the other, so this factor does not play a large role in the Court's decision.

3. Quality of the Pleadings and Vigorousness of the Litigation

The quality of the pleadings is a factor in appointment of lead counsel because it signals the "leadership team that will prosecute the claims on behalf of the various plaintiffs with the greatest vigor." *Bloom v. Anderson*, No. 2:20-CV-04534, 2020 WL 6710429, at *6 (S.D. Ohio Nov. 16, 2020) (citing *In re Wendy's Co.*, 2018 WL 6605394, at *2). Courts have recognized that "[w]hether someone was 'first to file' by itself has little to do with who is the best qualified to lead the case." *Nowack v. Ford Motor Co.*, 240 F.R.D. 355, 365 (E.D. Mich. 2006).

Noble and Combs assert that the Combs complaint is more robust than the others because it "includes a more expansive relevant period," "asserts additional allegations," and is the only one to include allegations "about false and misleading statements regarding Humana's CMS Star Ratings." [Action 418, DE 28-1 at 182–83]. They assert that Silva's motion to amend his complaint, which was filed after the Noble/Combs motion to appoint lead counsel, serves no purpose at this stage of the litigation other than to "fix deficiencies in his initial complaint in the

hopes that they will be ignored." [Action 418, DE 38 at 794]. Finally, they point to Silva/Rigrodsky Law's failure to accomplish service for five months after filing the complaint on July 22, 2024, leading the Court to issue a show cause order. [Action 418, DE 28-1 at 185, DE 38 at 792]. Silva argues that the "best indicator of the vigor with which Rigrodsky Law will prosecute this action . . . is the time and effort it expended in connection with the Amended Complaint." [Action 418, DE 32-1 at 718]. He argues that the proposed amended complaint is "far more comprehensive than Competing Movants' complaints" because it encompasses new claims based on the DOJ's recent complaint alleging violations of the False Claims Act ("FCA") against Humana. [Action 418, DE 32-1 at 701, 715]. Silva responds to Noble and Combs' claim that he failed to accomplish service by claiming proper service was effected when Defendants' former counsel informally accepted service via email. [*Id.* at 720-21].

While Silva is correct that the proposed amended complaint is more comprehensive than Combs' and Noble's, this does not necessarily reflect a more vigorous prosecution by Rigrodsky Law. Silva filed a motion to amend his complaint shortly after Combs and Noble filed their motion to appoint lead counsel, in which they claimed Silva's complaint was deficient. [Action 418, DE 30]. Then, shortly after filing the motion to amend his complaint, Silva filed the cross-motion to appoint Rigrodsky Law as lead counsel. [Action 418, DE 32]. In the amended complaint, Silva adds a significant amount of additional content, making it "almost twice as long" as the other complaints. [Action 418, DE 32-1 at 717]. However, each Plaintiff had previously agreed to extend the Defendants' time to respond until there is a ruling on the defendants' motion to dismiss in the related Delaware securities class action. Given that proceedings are paused until resolution of the class action, there is little benefit to filing an amended complaint at this juncture. In the Court's view, Silva's amended complaint reflects an effort to better position Rigrodsky Law to be

10

appointed lead counsel rather than an effort to vigorously prosecute the claims on behalf of the various plaintiffs. While Silva makes much of the fact that the amended complaint adds a significant amount of information and new claims, the fact that the amended complaint is "more comprehensive" does not sway the Court when there was no obvious benefit to amending the complaint at this stage other than to bolster Rigrodsky Law's position. [Action 418, DE 32-1 at 715]. The Court looks to the quality of the pleadings "not because a complaint's substance is final and cannot be amended, but rather because the pleadings serve as an accurate and appropriate barometer through which the court can assess which firm would best represent the interests of the shareholders and the rights of the corporation." *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849 NGG RER, 2006 WL 3511375, at *5 (E.D.N.Y. Dec. 5, 2006). In other words, there is no need for the parties to squeeze additional allegations into an amended complaint under the notion that it will then serve as the operative complaint in the consolidated action moving forward. Looking at the pleadings through this lens, the fact that the Combs and Noble original complaints are less comprehensive that the Silva amended complaint is inconsequential. As a result, the quality of Silva's amended complaint does not influence the Court's decision.

Comparing the original complaints filed by Silva, Noble, and Combs, the Court finds that all three are high quality in that they contain detailed factual allegations relating to the claims. However, the Combs complaint contains a more expansive relevant period and asserts additional allegations about Humana's CMS Star Ratings. [Action 171, DE 1 at 2, 45–46].

While Silva asserts that service was validly waived via informal acceptance by opposing counsel, the fact remains that Rigrodsky Law failed to file proof of the waiver with the Court. [Action 418, DE 32-1 at 720]. It was not until after the Court issued an order to show cause that Rigrodsky Law filed the waivers of service. [Action 418, DE 4, DE 5–18]. Silva asserts that the

11

failure to file proof of the waiver "does not invalidate his compliance with Fed. R. Civ. P. 4(m)." [Action 418, DE 32-1 at 720]. That may be true, but the failure to timely file the necessary waivers was nonetheless a mistake that is relevant in determining which firm is more likely to litigate vigorously. Though it was corrected, the error weighs against Rigrodsky Law, particularly when the competing movants made no such error in meeting deadlines. Given the relative strength of the Combs complaint and Rigrodsky Law's failure to file the waiver of service, this factor weighs in favor of appointing Rosen Law and GPM as co-lead counsel.

Pursuant to the above findings, the Court finds that, on balance, Noble Law and GPM are best suited to serve as lead counsel for this consolidated derivative action, with CSS as liaison counsel.

### III. CONCLUSION

For the reasons set forth above, the Court **ORDERS AS FOLLOWS**:

(1) Plaintiffs Noble and Combs' motion to consolidate cases and to appoint co-lead counsel and liaison counsel, [Action 418, DE 28], is **GRANTED**.

(2) Plaintiff Silva's cross-motion to appoint lead counsel, [Action 418, DE 32], is **DENIED**.

(3) The law firms Glancy Prongay & Murray LLP and The Rosen Law Firm are **APPOINTED** as co-lead counsel, and Conliffe, Sandmann & Sullivan PLLC is **APPOINTED** as Liaison Counsel.

(4) Within **45 days** after entry of this Order, co-lead counsel shall file a consolidated amended complaint.

(5) Silva's motion to amend the verified shareholder derivative complaint [Action 418, DE 30] is **DENIED** as **MOOT**.

(6) Noble and Combs' request for oral argument on their motion to appoint lead counsel [DE 41] is **DENIED** as **MOOT**.

(7) The above-captioned cases are hereby **CONSOLIDATED** into one action for all purposes pursuant to Rule 42(a).

(8) The short caption for the consolidated actions shall be "*In re Humana Shareholder Derivative Action*, Civil Action No. 3:24-cv-418-RGJ.

Rebecca Grady Jennings, District Judge
United States District Court

October 3, 2025